IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

          Plaintiff,

    vs.                        **Case No. 11-40090-01-RDR**

RYLAND PATTON, SR.,

          Defendant.

_____

### MEMORANDUM AND ORDER

Defendant, Ryland Patton, <u>Senior</u>, is charged with possession with intent to distribute crack cocaine within 1000 feet of a public school. This case is before the court upon defendant's motion to suppress evidence "following the illegal detention and arrest of the [d]efendant." Doc. No. 17 at p. 1. The motion further seeks to suppress statements defendant made following his alleged illegal arrest. <u>Id</u>. The court conducted an evidentiary hearing on this matter on January 13, 2012. During the hearing, the court heard the testimony of Deputy Sheriff Tracey Trammel and Deputy Sheriff Nick Pipkin.

After considering all of the evidence and arguments of counsel, the court concludes that the motion to suppress must be denied because defendant has failed to demonstrate a link between any alleged unconstitutional conduct and the evidence he seeks to have suppressed. In addition, the court concludes that defendant has abandoned any privacy interest in the drug evidence which was

seized and that intervening circumstances attenuated any connection between the alleged unconstitutional police conduct and statements defendant made after his arrest.

I.  Factual findings

The Shawnee County Sheriff's Department had a search warrant for the body and vehicle of Ryland Patton, Junior.  Ryland Patton, Jr. is not the defendant in this case.  He is defendant's son. Deputy Sheriff Pipkin was in charge of the investigation.  He asked Deputy Sheriff Trammel to help look for Ryland Patton, Jr., and Trammel had worked on the matter for a couple of days.  Trammel was aware of three locations where Ryland Patton, Jr. might be found off and on.  One of the locations was where defendant lived, 736 S.E. Pinecrest in Topeka, Kansas.  Trammel knew that Ryland Patton, Jr.'s "father" lived there.  Another location was where a girlfriend lived, 1411 S.W. 13th, also in Topeka, Kansas.

Pipkin showed Trammel a picture of Ryland Patton, Jr., but not a picture of defendant.  Trammel testified that he did not know Ryland Patton, Jr.'s father's name, and Pipkin testified that he did not tell Trammel that the father was Ryland Patton, Sr.  It seems to the court, however, that one could reasonably surmise that the father's name was Ryland Patton, Sr.  Trammel was told that the father drove a Dodge Durango, which Trammel had seen in front of the Pinecrest address.  Pipkin also told Trammel that Ryland Patton, Jr. would likely be armed and might attempt to flee if

2

confronted by the police.

In the morning of August 19, 2011, Trammel saw an unfamiliar white rental car at the Pinecrest address. He saw the car pull out and leave the parking lot and noticed a black male driving the car. He could not identify the driver. Trammel decided to follow the car and while doing so he spoke to Pipkin over the phone. It appeared to Trammel that the car might be traveling to the girlfriend's address, an apartment complex at 1411 S.W. 13th. Pipkin told Trammel that if the car pulled into the complex, the driver was probably Ryland Patton, Jr. The car did pull in and park in front of the building in the complex where the girlfriend lived.

Defendant exited the vehicle, but left it running. Trammel parked his car and exited as well. Trammel called to defendant, "Ryland Patton?" Defendant said, "Yes" and started to back away. Trammel said, "I need to talk you." Defendant then ran from Trammel a short distance and entered the doorway of a stairwell for the apartment building. A maintenance worker was in the area of the door, inside the stairwell, as this was happening. Trammel pursued defendant and, as Trammel entered the same door, he met defendant coming back toward him. Trammel ordered defendant to go down on the floor and defendant complied. Trammel testified that during this time he thought he was pursuing and detaining Ryland Patton, Jr.

Defendant asked Trammel who he was looking for. Trammel answered, "Ryland Patton, Jr." Defendant told Trammel that he was Ryland Patton, Sr. Trammel did not know whether to believe defendant. So, he continued to detain him. Around this time police backup arrived, including Deputy Pipkin. Pipkin confirmed for Trammel that defendant was Ryland Patton, Sr. He asked defendant where Ryland Patton, Jr. was and defendant responded "upstairs." Pipkin went upstairs and located Ryland Patton, Jr. in his girlfriend's apartment. Meanwhile, with the aid of other officers, Trammel handcuffed defendant. Trammel then looked around the stairwell area to see if anything, such as a gun, had been discarded. He found a baggy, apparently containing crack cocaine, in plain sight amidst some leaves and debris. Trammel spoke to the maintenance man who indicated that he saw defendant make a throwing motion in the area where the baggy was found and that he had not noticed the baggy when he had looked at that area of the stairwell prior to defendant's entry.

Pipkin came back downstairs. Pipkin did not execute the search warrant and did not arrest Ryland Patton, Jr.[1] Trammel told Pipkin about finding the baggy of crack cocaine and speaking to the maintenance man. Pipkin decided that defendant should be arrested and taken to the police station. At the police station, defendant

---

[1] Some time later, Ryland Patton, Jr. was arrested and charged in this court.

4

received <u>Miranda</u> warnings and made statements to law enforcement.

II.  <u>Legal analysis</u>

As this matter is before the court upon a suppression motion, defendant must demonstrate that the government has obtained evidence by exploiting an illegality.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963).  There must be a factual nexus between an illegal action by a government official and the evidence which defendant seeks to suppress.  <u>U.S. v. Albert</u>, 579 F.3d 1188, 1197 (10th Cir. 2009).  In other words, "a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct."  <u>U.S. v. Nava-Ramirez</u>, 210 F.3d 1128, 1131 (10th Cir.) <u>cert. denied</u>, 531 U.S. 887 (2000).  "If the defendant meets this burden, the government must prove the 'evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.'"  <u>Albert</u>, 579 F.3d at 1197 (quoting <u>Nava-Ramirez</u>, 210 F.3d at 1131).

The court is aware of two types of evidence in this case which are arguably subject to suppression:  the baggy of suspected cocaine and the statements by defendant.  The court shall first discuss whether the baggy of drugs was obtained by exploiting an

illegality.

      A.  <u>Baggy of suspected cocaine</u>

Defendant has not adduced evidence that the baggy of suspected cocaine would not have been discovered but for some unconstitutional conduct. It was not unconstitutional for Deputy Trammel to follow defendant to the apartment complex and ask to speak with him after defendant voluntarily parked his car and exited from it. "'Police officers may approach citizens, ask them questions and ask to see identification without implicating the Fourth Amendment's prohibition against unreasonable searches and seizures.'" <u>U.S. v. Esparza-Mendoza</u>, 386 F.3d 953, 958 (10th Cir. 2004) (quoting <u>U.S. v. Johnson</u>, 364 F.3d 1185, 1188-89 (10th Cir. 2004)). "'A person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way.'" <u>Id</u>. (quoting <u>U.S. v. Hernandez</u>, 93 F.3d 1493, 1498 (10th Cir. 1996)).

For the purpose of this motion the court shall assume from the government's evidence that defendant discarded the baggy of suspected drugs in the stairwell area after he ran from Deputy Trammel. Defendant has not demonstrated a link between this action and any unconstitutional conduct. Indeed, Deputy Trammel had not seized defendant at the time defendant allegedly threw the baggy from his person. <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991) (holding a seizure does not occur by a show of authority unless the

subject actually submits to such authority); see also, <u>U.S. v.</u>
<u>Harris</u>, 313 F.3d 1228, 1234 (10th Cir. 2002) <u>cert. denied</u>, 537 U.S.
1244 (2003) ("[a] police officer's assertion of authority without
submission by the individual does not constitute a seizure").

Furthermore, a defendant forfeits any privacy interest in
property which has been abandoned voluntarily.  See <u>U.S. v. Ojeda-</u>
<u>Ramos</u>, 455 F.3d 1178, 1186-87 (10th Cir. 2006).  "'[P]olice pursuit
or investigation at the time of abandonment of property . . . does
not of itself render abandonment involuntary.'"  <u>Id</u>. (quoting <u>U.S.</u>
<u>v. Hernandez</u>, 7 F.3d 944, 947 (10th Cir. 1993)).  The court
acknowledges that abandonment is not voluntary if it results from
a Fourth Amendment violation.  <u>Id</u>.  Defendant, however, has not
produced evidence that he was illegally searched or seized at the
time that the baggy of drugs was abandoned.

For two reasons it is immaterial that defendant <u>may</u> have been
illegally detained for several minutes either before or after
Deputy Pipkin told Deputy Trammel who defendant was.  First,
defendant had already abandoned any privacy interest in the baggy
of drugs.  Second, defendant's flight from Trammel led the officers
to suspect that he may have discarded a weapon or contraband from
his person.  This suspicion caused the officers to search the area
where defendant had been.  Therefore, the evidence shows that the
baggy of drugs was discovered through means independent of any
alleged constitutional violation.

B. <u>Post-arrest statements</u>.

Finally, any statements made by defendant after being transported to the police station and receiving a <u>Miranda</u> warning are not fruit of the poisonous tree. Defendant was arrested because law enforcement officers found an abandoned baggy of suspected drugs in his vicinity after he had fled from Deputy Trammel. The officers had also learned from an eyewitness that defendant made a throwing motion in the area where the drugs were found and that the baggy was not there shortly before defendant ran to that location. This information provided the officers probable cause to arrest defendant. See <u>U.S. v. Stewart</u>, 315 Fed.Appx. 554, 2009 WL 530116 (6th Cir.) <u>cert. denied</u>, 130 S.Ct. 134 (2009)(probable cause for arrest found under circumstances where defendant saw a patrol car, entered an alley, then exited the alley where baggy of drugs was subsequently found); see also, <u>U.S. v. Wider</u>, 951 F.2d 1283, 1286 (D.C.Cir. 1991)(finding crack cocaine in sack abandoned by defendant provides probable cause for arrest). This information was the "but for" cause of defendant's arrest and subsequent interrogation, not any period of illegal detention.

Furthermore, any taint which might have been present because of the alleged illegal detention was attenuated by the time defendant made statements to law enforcement. In <u>Brown v. Illinois</u>, 422 U.S. 590, 603-04 (1975), the Supreme Court stated that three factors should be considered to determine whether there

8

has been attenuation.  The first factor is the lapsed time between the illegality and the acquisition of the evidence.  Id. at 603. In this instance, it is unclear how much time elapsed, but obviously a fair amount of time passed between when defendant was detained at the apartment complex and when he was interrogated at the police station.  The second factor is the purpose and flagrancy of the official misconduct.  Id. at 604.  Here, defendant was detained for some minutes after he fled from Deputy Sheriff Trammel in what was described as a high-crime neighborhood and during a time when a fellow officer was conducting a drug investigation of defendant's son in the same building.  If some part of that detention was illegal, it does not appear to be a flagrant or purposeful constitutional violation.  Finally, the court must consider the presence of intervening circumstances.  Id. at 603-04. In this case, the change in location and the administration of the Miranda warning itself are factors which help establish the attenuation of any taint from the alleged illegal detention.  See U.S. v. Torres-Castro, 470 F.3d 992, 999-1001 (10th Cir. 2006) cert. denied, 550 U.S. 949 (2007)(finding that post-arrest statements made after a Miranda warning are attenuated from the conduct of an unconstitutional protective sweep).  After considering all of the relevant factors, the court believes defendant's statements to law enforcement after receiving the Miranda warning are attenuated from any alleged unconstitutional misconduct.

III.   <u>Conclusion</u>

For the above-stated reasons, defendant's motion to suppress shall be denied.

**IT IS SO ORDERED.**

Dated this 18th day of January, 2012 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge